IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DESIREE T.,[1]

      Plaintiff,

v.                                                      Civ. No. 20-1330 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

## MEMORANDUM OPINION AND ORDER[2]

Plaintiff argues that the Commissioner committed error when she denied Plaintiff's claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Among other things, Plaintiff argues that the ALJ discounted the opinion of her treating mental health providers by stating—incorrectly—that Plaintiff was not receiving mental health treatment. Because the ALJ mischaracterized the evidence of record and that error is harmful, the Court agrees with Plaintiff. As a result, the Court GRANTS Plaintiff's Motion To Reverse And Remand For Rehearing, With Supporting Memorandum, Doc. 25, and remands this matter for further consideration consistent with this Opinion.[3]

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 5, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).

[3] The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

## APPLICABLE LAW

  A. <u>Disability Determination Process</u>

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

> (1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.
>
> (2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.
>
> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the

---

[4] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

2

> most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5)   If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.   Standard of Review

This Court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the Court "neither reweigh[s] the

evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

      A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

4

## ANALYSIS

The ALJ rejected the opinions of Plaintiff's *treating* mental health practitioners in part because of the ALJ's assertion that Plaintiff "was not receiving mental health *treatment*." AR 21 (emphasis added). The contradiction in this statement is evident on its face. For more than a year before the date of the ALJ's decision, Plaintiff *was* receiving mental health treatment from the very providers whose opinions the ALJ rejected. Remand is required for a proper analysis of Plaintiff's mental health limitations.

A.  The ALJ's decision

At step two, the ALJ found that Plaintiff has a severe impairment of depression. AR 12. At step three, the ALJ found that this impairment did not meet a listing. AR 13-14. At step four, the ALJ found that Plaintiff is "able to understand remember and carry out simple and some detailed tasks; frequent interaction with supervisors and co-workers; incidental interaction with the general public; can respond appropriately to changes in a routine work setting." AR 15.

In the narrative discussion, the ALJ acknowledged that "[o]n December 5, 2018, the claimant presented to La Ventana Behavioral Health with complaints of depression and anxiety for about eight years. She had been taking medications, which she believed helped." AR 18. The ALJ also acknowledged that "[o]n May 14, 2019, the claimant presented to Mesilla Valley Mental Health Associates for a psychological evaluation." *Id.* Among other things, this evaluation found that Plaintiff's "mental control was poor" and that, in various ways related to memory, "her functioning was impaired." *Id.* "The absence of concentration did not appear to relate to effortfulness, which evaluator felt was good." *Id.* "Her attention and concentration showed marked impairment. The attentional issues could be contributory towards many of the problems that she reported with respect to memory." *Id.*

The ALJ then evaluated three opinions related to mental health. First, "[o]n March 4, 2019, Lura Wallace, LCSW submitted a letter on behalf of the claimant to be excused from jury duty." AR 20. The ALJ specifically acknowledged that "Ms. Wallace noted she had been providing mental health services since February 2019 to the claimant." *Id.* "Due to her mental health issues, she experienced poor sleep resulting in exhaustion, decreased energy and inability to follow through on basic tasks and selfcare." *Id.* Ms. Wallace opined the claimant had difficulty concentrating." *Id.* Her mental health and physical health issues "significantly impacted her ability to focus, process information, concentrate and follow through on tasks." *Id.* The ALJ found this opinion "less persuasive" because it "is not consistent with or supported by the medical evidence." AR 20, 21. "There is no functional assessment that indicates any of the above opinion." AR 20-21. "In addition, the claimant is not received [sic] any mental health treatment." AR 21. The ALJ acknowledged that Ms. Wallace wrote a second letter on July 1, 2019, but stated that the opinion that Plaintiff is unable to work is an issue reserved to the Commissioner. *Id.*

Second, "[o]n April 10, 2019, Lorena Garcia, MSN, RN wrote a letter on the claimant's behalf." AR 21. Again, the ALJ acknowledged that "[s]he indicated the claimant had been her patient since December 2018." *Id.* "Ms. Garcia opined the claimant became easily fatigued, was unable to sleep and at time it was very difficult to get out of bed due to her depression and pain from fibromyalgia, which caused her anxiety and mood swings to exacerbate. When this occurred, she was unable to be around others, it is difficult for her to concentrate, memory fails and noises make her ability to focus on a task almost impossible." *Id.* The ALJ concluded: "In the evidence, the claimant does have trouble sleeping. She had pain in her cervical spine.

However, she was not receiving mental health treatment. Therefore, I find this opinion only partially persuasive." *Id.*

Finally, when evaluating the opinion of the state agency psychologist, the ALJ noted that the psychologist found that Plaintiff "could perform simple and some details [sic] tasks." AR 21. "She could relate to supervisors and co-workers and have incidental contact with the public." *Id.* "She could adapt to a work environment." *Id.* Interestingly, the ALJ observed that "[t]here was limited mental health treatment." *Id.*[5] "However, she did indicated [sic] that her physical impairments caused depression and some anxiety." *Id.* Therefore, the ALJ found "this opinion persuasive." *Id.*

In summary, the ALJ acknowledged three separate times that Plaintiff is receiving mental health treatment, but nonetheless discounted the opinions of her mental health treatment providers with the confusing and contradictory assertion that Plaintiff is *not* receiving mental health treatment.

B.  Mental health evidence

In addition to the records the ALJ discussed, Plaintiff had 10 appointments from January 2019 to April 2020 with Ms. Garcia, a Psychiatric-Mental Health Nurse Practitioner. AR 551-64, 602-36. During these appointments, Ms. Garcia reviewed Plaintiff's medications, her medical complaints, history, stressors, and sources of risk; performed mental status examinations; and engaged in counseling and coordination of care, and cognitive behavioral therapy and dialectical behavior therapy. *Id.* Ms. Garcia made findings at almost every visit documenting an anxious or flat affect; feelings of helplessness and a lack of motivation; difficulty pronouncing words; sleep

---

[5] The ALJ does not mention that the state agency psychiatrist reviewed Plaintiff's file in November 2018, AR 76—that is, prior to Plaintiff establishing mental health treatment with Ms. Garcia and Ms. Wallace.

issues; inability to focus; worsening memory issues; and complaints of pain. *E.g.*, AR 551, 561, 625, 627, 628, 633. Ms. Garcia also documented a GAF of 78. AR 559.

There are also treatment records from Lura Wallace, Licensed Clinical Social Worker and Diplomate in Clinical Social Work, from February 1, 2019 through May 15, 2020. AR 654-807. These records demonstrate Plaintiff's regular participation in therapy treatment throughout the course of this time period. Among other things, Ms. Wallace documents Plaintiff's difficulty with speech, observing instances of slurred words; tremors and twitches in arms and legs; reports of falling; reports of severe fatigue, falling asleep during the day, and frequent napping; memory problems; hopelessness; feeling depressed and overwhelmed; and a blunted affect and dysphoric mood. *E.g.*, AR 654, 662, 668, 687, 689, 691, 693, 714, 751, 756.

    C.    <u>Legal standard</u>

The Commissioner correctly observes that Plaintiff filed her disability application after March 27, 2017, and thus the significantly revised rules for medical opinions apply to this case. Doc. 30 at 10. For claims filed on or after March 27, 2017, all medical sources can provide evidence that is categorized and considered as medical opinion evidence and subject to the same standard of review. 20 C.F.R. § 404.1520c(b). The factors of supportability and consistency are the most important factors in determining the persuasiveness of a medical opinion. *Id.* § 404.1520c(b)(2).

Nonetheless, the nature of substantial-evidence review has not changed in light of the new regulation. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The decision below must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005)

(internal quotation marks omitted). As Judge Kirtan Khalsa explained, these "requirement[s] enable[] the courts to engage in meaningful judicial review of agency decisions and thus exist[] independently of agency regulations." *Thompson v. Saul*, No. 20cv672 KK, 2021 WL 2711378, at *8 (D.N.M. July 1, 2021).

In addition, there is no reason to think the regulations altered settled principles of administrative law pertaining to how ALJs review evidence. "The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996). The ALJ should not ignore relevant evidence or mischaracterize the evidence. *Id.* at 1010 ("Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."); *Frantz v. Astrue*, 509 F.3d 1299, 1302 (10th Cir. 2007) (ALJ erred by "ignor[ing] evidence from [a clinical nurse specialist] that would support a finding of disability while highlighting evidence favorable to the finding of nondisability"); *Talbot v. Heckler*, 814 F.2d 1456, 1463-64 (10th Cir. 1987) (reversing where, among other things, ALJ erred by mischaracterizing the evaluation of a treating physician).

D.     Discussion

The ALJ made multiple errors when evaluating the opinions of Plaintiff's mental health providers. As discussed above, Plaintiff has undergone substantial treatment related to her mental health with a psychiatrist nurse practitioner and a therapist. The treatment notes contain substantial support for the providers' opinions, as described above. Therefore, the ALJ erred by ignoring relevant evidence in the narrative discussion (these treatment records) and by mischaracterizing the evidence (stating that these opinions are "not consistent with or supported by the medical evidence" and that "the claimant is not received [sic] any mental health

treatment"). In addition, the contradictions in the ALJ's reasoning mean that the Court cannot "follow the adjudicator's reasoning in conducting [its] review" or "determine that correct legal standards have been applied." *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). Finally, these errors were harmful, as the RFC does not take into account the limitations expressed by these providers.

In response, the Commissioner does not acknowledge that the ALJ ignored years of mental health treatment records. The Commissioner does not acknowledge that the ALJ— repeatedly—rejected opinions from treating mental health providers on the internally contradictory basis that Plaintiff was not receiving mental health treatment. The Commissioner argues instead that the Court cannot reweigh the evidence. Doc. 30 at 15. But to *re*weigh the evidence, the ALJ must have weighed it in the first place. And ignoring all the evidence that would be placed on the Plaintiff's side of the scale is not "weighing" the evidence.

The Commissioner also argues that Ms. Garcia and Ms. Wallace's opinions are not opinions at all and the ALJ had no obligation to discuss them in the first place. Doc. 30 at 15-18. The Court disagrees. An opinion is a medical source's statement on "the ability to perform mental demands of work activities." 20 C.F.R. § 416.913(a)(2)(i)(B). Ms. Garcia and Ms. Wallace opined that Plaintiff was experiencing the inability to follow through on basic tasks and selfcare, had difficulty concentrating, was easily overwhelmed in emotional situations; that her mental health issues significantly impacted her ability to focus, process information, concentrate and follow through on tasks; that she is in "almost . . . an agoraphobic state"; that she becomes easily fatigued, was unable to sleep and at times finds it very difficult to get out of bed; and that when her anxiety and mood swings were exacerbated she was unable to be around others, it is difficult for her to concentrate, her memory fails, and noises make her ability to focus on a task

almost impossible. AR 21. These are all activities required for work and the medical sources clearly state they are significantly impacted such that, if the opinions were credited, they would contradict the RFC.

Finally, even if these were not true medical opinions, the Court would still find the ALJ erred in failing to discuss relevant evidence (years of treatment records from two mental health providers) in the step four narrative. The ALJ failed to discuss almost all of this evidence beyond the one treatment note from December 5, 2018 establishing care with Ms. Garcia. This is harmful error on its own, and requires reversal. The Court remands for a proper analysis of the medical evidence and opinion evidence related to Plaintiff's mental health treatment. The Court declines to reach Plaintiff's remaining allegations of error, as they may be affected by the analysis on remand.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion To Reverse And Remand For Rehearing, With Supporting Memorandum, Doc. 25.

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**